IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BERNADINE KENNEDY KENT,

    Plaintiff,

v.

THE OHIO HOUSE OF REPRESENTATIVES
DEMOCRATIC CAUCUS, *et al.*,

    Defendants.

Case No. 2:20-cv-6419
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim and Lack of Jurisdiction under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) filed by Defendants Minority Leader Emilia Strong Sykes, Representative Fred Strahorn, and the Ohio House of Representatives Democratic Caucus. ("Def.'s Mot.," ECF No. 7.) Plaintiff Bernadine Kennedy Kent filed a response in opposition ("Pl.'s Resp.," ECF No. 8) and Defendants replied ("Def.'s Reply," ECF No. 9). For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

### I. Background

This case arises out of the Ohio House of Representatives Democratic Caucus' vote to remove Plaintiff Bernadine Kennedy Kent from the Democratic Caucus and deny her access to Democratic Caucus resources.

Plaintiff served as a representative for the 25th District in the Ohio House of Representatives for two terms from January 2017 to January 2021. (Compl. ¶ 4; Def.'s Mot. at 2.) On April 2, 2018, Plaintiff's Legislative Aid submitted a press release to the House Democratic

1

Caucus Communications Director to be distributed to the media and posted on her official representative website. According to the plaintiff, the press release was titled "Child rape reports routinely go to Columbus Police Division's junk mail" and included a video of a Columbus Police Commander allegedly stating in a deposition that he sends child abuse reports to his "junk mail." In her press release, Plaintiff expressed concern that law enforcement did not address the Commander's statements in the video. Plaintiff attached to her press release a letter to Columbus Mayor Andrew Ginther that included unauthorized signatures from Ohio Legislative Black Caucus (OLBC) members. (*Id.* ¶¶ 15, 27, 33.)

Fred Strahorn (then Minority Leader) and the House Democratic Caucus Chief of Staff allegedly prohibited the Communications Director from posting Plaintiff's press release on her official website. Plaintiff emailed Minority Leader Strahorn and the Chief of Staff criticizing their decision to block her press release. Two days later, on April 4, 2018, Plaintiff submitted a formal complaint to the Speaker of the Ohio House of Representatives against Minority Leader Strahorn and the Chief of Staff for denying her access to Democratic Caucus communications and media support services. On April 23, 2018, Plaintiff emailed Minority Leader Strahorn requesting he resign from his position as Minority Leader. (*Id.* ¶¶ 16, 17, 18.)

Plaintiff avers that Minority Leader Strahorn refused to post her press release because he disagreed with her "tactics and strategies." (*Id.* ¶ 23.) In a Columbus Dispatch Article, Minority Leader Strahorn allegedly explained his decision, stating, "I will never tolerate a member of the caucus using staff and tax-payer funding resources to fake, forge or fabricate any claim, request or document to further their own political interest or personal vendetta. I won't apologize for safeguarding taxpayer resources from being used to fuel the political circus of one individual lawmaker." (*Id.* ¶ 21.)

2

On June 7, 2018, Minority Leader Strahorn called for a vote in the House Democratic Caucus to remove Plaintiff from the Caucus. (*Id.* ¶ 27.) The Caucus voted to remove her. (*Id.* ¶ 27.) Thereafter, Plaintiff was allegedly denied access to House Democratic Caucus resources including legislative policy aides, communications and media professionals, legal counsel, and administrative staff. (*Id.* ¶ 29.) She was also barred from attending House Democratic Caucus meetings. (*Id.* ¶ 30.)

Plaintiff was reelected to represent the 25th District in the Ohio House of Representatives in November 2018. (*Id.* ¶ 32.) After she was sworn in, the Chief of Staff emailed her stating, "The House Democratic members voted to remove you from the Democratic Caucus. You are not entitled to vote on Democratic caucus officers in a caucus meeting since you are not a part of the caucus. You are entitled to vote for minority caucus leadership on the House floor just like any matter that comes before the chamber." (*Id.* ¶ 35.) On May 22, 2019, Plaintiff attempted to attend House Democratic Caucus meeting but was physically blocked from entering the room. (*Id.* ¶ 38.) A month later, on June 12, 2019, the new Minority Leader, Emilia Strong Sykes, emailed Plaintiff stating that the House Democratic Caucus had reaffirmed its decision as to Plaintiff's removal on June 6, 2019. (*Id.* ¶ 41.)

Although Plaintiff retained her ability to vote and participate in House proceedings, she alleges that her removal and exclusion from the House Democratic Caucus diminished her ability to represent constituents. (*Id.* ¶ 59.) After she was blocked from entering the House Democratic Caucus meeting, Plaintiff did not return to the Ohio Statehouse or the Riffe Center due to her alleged fear of "retaliation, retribution, depression, violence, post-traumatic stress, and anxiety." (*Id.* ¶ 39.) For the same reasons, she alleges that she did not seek re-election to the House for a third term. (*Id.* ¶ 60.) Plaintiff avers that Defendants' actions caused her to seek medical treatment

for depression, anxiety, post-traumatic stress, high blood pressure, and several other physical and mental ailments. (*Id.* ¶ 61.)

Plaintiff filed this action on December 16, 2020, against Defendants Minority Leader Emilia Strong Sykes, Representative Fred Strahorn, and the Ohio House of Representatives Democratic Caucus (collectively, "Defendants") alleging retaliation in violation of the First Amendment to the United States Constitution under 42 U.S.C. §1983 and conspiracy to retaliate under 42 U.S.C. §1985.

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining this, a court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin., Corp.*, 281 F.3d 613, 619 (6th Cir. 2007). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

**III. Analysis**

Defendants raise several arguments in support of dismissal beginning with a claim of legislative immunity. Because legislative immunity bars this suit the Court declines to address Defendants' remaining arguments.

Defendants assert that legislative immunity applies as voting to remove Plaintiff from the House Democratic Caucus and barring Plaintiff's access to caucus resources were "legislative actions." (*Id.*) Plaintiff responds that Defendants are not entitled to absolute immunity because (1) Defendants' actions were not legislative, and (2) Defendants' actions violated the House Democratic Caucus Rules, the Ohio Revised Code, and the Ohio Constitution. (Pl.'s Resp. at 11–13.)

**A. Legislative Activity**

"State legislators…are immune from suit for 'all actions taken in the sphere of legitimate legislative activity.'" *Gamrat v. McBroom*, 822 F. App'x 331, 333 (6th Cir. 2020) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). Legislative activity includes actions that are "integral" to the legislative process, *Bogan*, 523 U.S. at 55, but also actions that are integral to the "deliberative and communicative processes." *Gamrat v. McBroom*, 822 F. App'x 331, 333 (6th Cir. 2020) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). This includes not only speech and debate, but also voting, circulation of information to other legislators, and participation in the work of legislative committees. *See Gamrat*, 822 F. App'x at 334 (voting); *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973) (circulation of information to other legislators); *Gravel*, 408 U.S. at 624 (participation in legislative committees). Legislative immunity does not attach, however, to actions that are "casually or incidentally related to legislative affairs" such as performing errands for constituents, making appointments with government agencies, securing government contracts,

5

preparing news releases, and delivering speeches outside the House. *Youngblood v. DeWeese*, 352 F.3d 836, 838–840 (3rd Cir. 2003) (quoting *United States v. Brewster*, 408 U.S. 501, 528 (1972)). The Supreme Court has held that "whether an act is legislative turns on the nature of the act, rather than on motive or intent." *Bogan*, 523 U.S. at 54.

Defendants are entitled to absolute legislative immunity, even when viewing all of Plaintiff's allegations as true and drawing all reasonable inferences in her favor, because voting to remove Plaintiff from the House Democratic Caucus and denying her access to resources are legislative actions. Legislative immunity protects legislators who take disciplinary actions against other legislators. *See Whitener v. McWatters*, 112 F.3d 740, 741, 744 (4th Cir. 1997) (holding that "a legislative body's discipline of one of its members is a core legislative act" and affirming dismissal based on legislative immunity where plaintiff was disciplined for his "unpopular" speech). Thus, the House Democratic Caucus' act of disciplining Plaintiff for sending a letter with unauthorized signatures to the Mayor is legislative activity. Additionally, Defendants' vote to expel Plaintiff from the House Democratic Caucus was a legislative activity. *See Gamrat*, 822 F. App'x at 334 ("the House's vote to expel the plaintiff from the House of Representatives was legislative activity, regardless of any bad faith, and the plaintiff cannot sue the House Defendants for participating in that process.").

In an analogous case, *McCann v. Brady*, the Seventh Circuit found that a Minority Leader's actions leading to the expulsion of a legislator from the Senate Republican Caucus was protected by legislative immunity. 909 F.3d 193, 197 (7th Cir. 2018). In that case, the plaintiff senator was expelled from the caucus and subsequently denied access to caucus resources including staff analysis of bills, the coordination and movement of active bills, drafting assistance for a senator's own bills, detailed status reports and schedules, help with communications, photography, in-

district events, and other constituent services. *Id.* at 195. The plaintiff claimed that without access to a wide array of resources provided by his party, he could no longer effectively perform his duties as a senator. *Id.* at 196. The Court determined that access to caucus resources is "intimately…tied to the legislative process" and therefore the determination about who receives those resources is a "quintessentially legislative activity." *Id.* at 197. It is not the job of federal courts to "micro-manage exactly which resources, and in what amount, the legislative leaders of the two major political parties dole out to their members." *Id.* at 198. Other courts have reached similar conclusions. *See, e.g.*, *Youngblood*, 352 F.3d at 837 (granting legislative immunity to two defendant representatives' allocation of district office funds from the legislative appropriation because it was a legislative act).

Consistent with *McCann* and *Gamrat*, Defendants' vote to remove Plaintiff from the House Democratic Caucus is a legislative activity. Disciplining a legislator and expelling her from the caucus is a "core legislative activity" protected by absolute legislative immunity. *See Whitener*, 112 F.3d at 744. Moreover, Defendants' decision to deny Plaintiff access to caucus resources including legislative policy aides, communications and media professionals, legal counsel, and administrative staff is legislative activity because those caucus resources are integral and "intimately…tied to the legislative process." *See McCann*, 909 F.3d at 197–198.

### B. Violation of Caucus Rules, Ohio Revised Code, and Ohio Constitution

Plaintiff also argues that Defendants are not entitled to legislative immunity for expelling her from the Democratic Caucus because the House Democratic Caucus Rules and the Ohio Revised Code do not contain a provision for expelling caucus members. (Pl.'s Resp. at 8.) House Democratic Caucus Rule III (A) provides that "[a]ll persons duly elected or appointed as a Member of the Ohio House of Representatives under the Affiliation of the Democratic Party are hereby

7

afforded the rights and privileges associated with these Caucus rules and as such are deemed Members of the Ohio House Democratic Caucus." (Compl. ¶ 51, Exh. 1.) The Ohio Revised Code defines "Caucus" to mean "all members of [the] house of representatives…who are members of the same political party. Ohio Rev. Code §§ 101.15(A)(1), 3517.01(A)(14). Plaintiff argues that, as a House Representative affiliated with the Democratic Party, she was entitled to be a member of the House Democratic Caucus. (Pl.'s Resp. at 8.) Even if her allegation is true and Defendants violated the House Democratic Caucus Rules and the Ohio Revised Code, Defendants are still entitled to legislative immunity.

*McCann* is again, instructive. The plaintiff in that case offered the Senate rules defining "minority caucus" to include "that group of Senators from other than the majority caucus." *McCann*, 909 F.3d at 194. Even though this definition technically indicated that he was entitled to minority caucus membership, the Court determined that legislative immunity still applied. *Id.* at 198. Legislative leadership has discretion to block certain legislators from their internal deliberations—including analyses of legislative proposals and strategies discussions—"without straying outside the bounds of legislative immunity." *Id.*

More importantly, legislative immunity is absolute. *Bogan*, 523 U.S. at 49. It is not qualified and does not disappear if a legislator breaks an internal caucus rule or creates a group that no longer conforms to a definition provision of a law. If a state legislator is performing a legislative activity, she is immune from *all* civil actions challenging her conduct. *See Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). Since the Court has concluded that Defendants' conduct was legislative activity, they are entitled to absolute legislative immunity regardless of whether they violated the House Democratic Caucus Rules or the Ohio Revised Code.

Plaintiff also points to Article 2 Section 6 of the Ohio Constitution, which reads: "Each House may punish its members for disorderly conduct and, with the concurrence of two-thirds of the members elected thereto, expel a member." This provision of the Constitution does not apply because it guides Representatives' removal from the House itself, not the House Democratic Caucus. The parties do not dispute that Plaintiff remained a member of the House and retained her ability to vote and participate in House proceedings. (Compl. ¶ 59.)

Moreover, in *Pennhurst State Sch. v. Halderman*, 465 U.S. 89 (1984), the Supreme Court held that a federal court is barred by the 11th Amendment from ordering a state official to comply with state law, rather than federal. This Court is without jurisdiction to consider Plaintiff's claims under state law.

Consequently, Defendants are entitled to absolute legislative immunity for voting to remove Plaintiff from the House Democratic Caucus and denying her access to House Democratic Caucus resources.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 7.) The Clerk is directed to close this case.

**IT IS SO ORDERED.**

**9/27/2021**              **s/Edmund A. Sargus, Jr.**
**DATE**             **EDMUND A. SARGUS, JR.**
            **UNITED STATES DISTRICT JUDGE**